UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NINA ABRAMYAN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY, et al.,<br><br>　　　　　　　Defendants. | Civil Action No. 12-cv-01064 (BJR)<br><br>MEMORANDUM OPINION |

**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a motion for summary judgment by Defendants United States Department of Homeland Security ("DHS"), Attorney General Eric Holder, United States Citizenship and Immigration Services ("USCIS"), and the USCIS National Records Center ("NRC"). Plaintiff Nina Abramyan claims that Defendants (hereinafter "USCIS") violated the Freedom of Information Act (FOIA) in processing a request for information made on her behalf by her attorney. *See* Complaint, Dkt. #1, ¶¶ 2, 5. USCIS argues that it satisfied the statutory requirements by conducting a reasonable search, producing all responsive documents covered by the statute, and properly withholding certain documents under statutory exemptions. Defendants' Motion for Summary Judgment (hereinafter "Defs' Mot."), Dkt. #7, at 1. Having reviewed the parties' briefs together with all relevant materials, the Court grants Defendants' Motion for Summary Judgment, for the reasons stated below.

I. **BACKGROUND**

On December 8, 2011, Abramyan's attorney, Anna Darbinian, filed a FOIA request with the USCIS. The request included a completed copy of form G-28 ("Notice of Entry of Appearance

as Attorney or Accredited Representative"), and a completed copy of form G-639 ("Freedom of Information/Privacy Act Request"), along with a letter from Darbinian. *See* Compl., Ex. A-1. Darbinian requested a "complete copy of the Alien File (A-File) (including: all decision information, all applications, all petitions, all notices, all exhibits, all submissions, all receipts, and any and all documents that consist of the complete and full Alien file from USCIS)." *Id.* The letter gave Abramyan's full name, an alternate name ("Nina Hovsepyan"), her date of birth, and her place of birth (Azerbaijan), and stated that her Alien Number, or "A-Number," was unknown. *Id.* The G-639 form contained the same information, and also included a pending visa petition number, listed in a box titled "Petition or Claim Receipt Number." *Id.*

On December 19, 2011, USCIS acknowledged receipt of Darbinian's FOIA request, stating that it had "completed a search of our Central Index System (CIS) and Computer Linked Applications Information Management Systems (CLAIMS)," but that "no records responsive to your request were located." Compl., Ex. A-2. USCIS's response letter referenced the visa petition number Abramyan had submitted on her G-639 form. *Id.*

Darbinian appealed the determination to the USCIS Appeals Office on January 23, 2012. She alleged in the appeal letter that her client was seeking a visa from the United States Consulate in Moscow, and that the consulate had informed her of a previous application for asylum, made in 1999. Compl., Ex. B-1. Darbinian explained that according to the consulate, Abramyan's 1999 asylum application contained misrepresentations and/or fraud. *Id.* Darbinian argued in the administrative FOIA appeal that if the Moscow consulate had a record of Abramyan's prior application, USCIS must also have a record of Abramyan's asylum application, and therefor Abramyan should have an A-file. *Id.* Darbinian added that Abramyan was the beneficiary of a pending visa petition filed by Abramyan's mother, again referencing the

petition number, and also mentioned that Abramyan was the subject of a refugee status application filed at the State Department's Washington processing center "as early as June 1993." *Id.* Darbinian requested an expedited reply, within 20 days, based on her need to timely file a waiver on her client's behalf, in response to the consulate's allegations of misrepresentation and/or fraud. *Id.*

On February 2, 2012, USCIS informed Darbinian via letter that it had decided to remand her request for further search. Compl., Ex. B-2. On February 13, 2012, USCIS wrote Darbinian acknowledging that her request had been received and was being processed on the "complex track," or "Track 2," of USCIS's first-in, first-out multi-track system. Compl., Ex. C.

In a letter dated April 23, 2012, USCIS wrote to Darbinian that it had completed review of its records, and had identified 184 pages of responsive documents. Defs' Mot., Ex. F. USCIS determined that it would disclose 165 pages in full and two pages in part. *Id.* The letter explained that USCIS was withholding six pages because they contained no reasonably segregable portions of non-exempt information, citing 5 U.S.C. § 552(b)(5), (b)(6), and (b)(7)(e) as the applicable FOIA exemptions. *Id.*[1] The letter itself did not describe the withheld documents or connect any particular document with the asserted exemptions.

Abramyan filed this action on June 26, 2012.[2] She seeks a declaratory judgment that USCIS is in violation of FOIA, and a court order requiring USCIS to release to her all the requested files. Compl. at 8. As she represented to USCIS, Abramyan alleges that the United States consulate in Moscow deemed her ineligible for a visa due to material misrepresentations in an

---

[1] USCIS also turned up eleven pages of documents from Immigration and Customs Enforcement (ICE). USCIS referred those documents to ICE so that ICE could review them and respond to Darbinian directly. *Id.*

[2] It appears that Darbinian did not receive the records and letter from USCIS until August 2012, after filing this action and engaging in further communication with USCIS. Defs' Mot., Statement of Material Facts Not in Dispute ¶ 20; Plaintiff's Statement of Genuine Issues and Material Facts in Dispute (Dkt. #10), ¶¶ 7-8. Though the Complaint alleged that USCIS had not responded to the request as of June 26, 2012, *see* Compl. ¶ 18, in subsequent briefing Abramyan concedes that she has by this point received the materials described in the April 23, 2012 letter from USCIS. Pl's Statement of Genuine Issues, ¶ 8.

3

application for asylum filed by her in 1999.  Compl. ¶¶ 3, 14.  Abramyan argues that she needs the files associated with the 1999 asylum application in order to respond to the misrepresentation charges.  *Id.* ¶ 19.

In support of its Motion for Summary Judgment, USCIS submitted the Declaration of Brian Welsh ("Welsh Dec."), the Deputy Branch Chief of the NRC FOIA Unit.  With respect to the adequacy of USCIS's search for responsive records, Welsh stated that Darbinian's January 3, 2012 appeal letter included "additional information" – namely Abramyan's previous asylum application and visa petition number – that allowed USCIS to retrieve Abramyan's A-File.  Welsh Dec. ¶ 8. Welsh explained that USCIS used Abramyan's visa petition number to search USCIS's Person Centric Query System (PCQS), which "enables USCIS staff to query an individual's identifying information, in this instance a visa petition number, and locate government records pertaining to that individual."  *Id.* ¶ 12.  Having retrieved Abramyan's A-number, USCIS tracked down her A-file.  *Id.*

Welsh described the documents USCIS withheld.  According to Welsh, USCIS relied on FOIA exemption (b)(6) in redacting certain personal details of the individual who filed a petition on Abramyan's behalf, and in redacting certain personal details of the interpreter used in the asylum interview.  *Id.* ¶¶ 17-18; *see* 5 U.S.C. § 552(b)(6).

Welsh also explained that USCIS withheld in full a two-page document entitled "Assessment to Refer," and four pages of handwritten notes, under exemption (b)(5).  *Id.* ¶ 19; *see* 5 U.S.C. § 552(b)(5).  Welch described the "Assessment to Refer" as "an internal agency record prepared by the asylum officer after his/her interview with the Plaintiff…[which] contains a brief factual distillation of the Plaintiff's asylum interview and includes the INS asylum officer's impressions of that interview, including an assessment of the Plaintiff's credibility, reasons for that

4

assessment, and the recommendation of the asylum officer to deny the plaintiff's application for asylum and refer her to an immigration judge for further proceedings." *Id.* According to Welsh, the "Assessment to Refer" "reflects a summary of the pertinent facts and the officer's impressions and conclusions and is an integral part of the deliberative process the agency undertakes when determining how to adjudicate an asylum application." *Id.* ¶ 20. Welsh characterized the assessment as the asylum officer's "initial recommendation on the asylee's application," reviewed by a supervisory officer. *Id.*

As for the handwritten notes, Welsh explained that the first page "contains handwritten notes of an INS officer concerning his/her review of records relevant to the Plaintiff's asylum application," including "discussion of birth certificates" of Abramyan and another individual. *Id.* ¶ 21. Welsh said that "[t]he notes reveal the INS officer's impressions about the birth certificates relevant to Plaintiff's asylum claim and indicated the officer needed additional information concerning the birth certificates." *Id.* The next three pages were described as "handwritten notes" that "record various portions of the Plaintiff's asylum interview and include some discussion about the Azerbaijan birth certificates the Plaintiff provided for herself and her daughters. *Id.* Welsh asserted that "[t]he notes reflect commentary on the veracity of documents submitted by the Plaintiff in support of her asylum application," as well as "preliminary conclusions drawn by the asylum officer during the Plaintiff's asylum interview." *Id.*

Welsh maintained that "none of the information in the records at issue can be reasonably segregated" because "[t]he factual portions of the Assessment to Refer and in the handwritten notes cannot be severed from their context." *Id.* He stated that "[t]he factual distillation in the Assessment to Refer record and in the handwritten notes does not purport to be a verbatim transcript of the Plaintiff's asylum interview," but rather reflected the asylum officer's selection

5

of pertinent facts. *Id.*

Relying upon Welsh's declaration, USCIS claims that the search it conducted was adequate under FOIA, and that it properly withheld certain documents under FOIA exemptions (b)(5) and (b)(6). Defs' Mot. at 7-8, 10-15. Specifically, USCIS argues that the search it made in response to Abramyan's February, 2012 appeal was made in good faith, using methods reasonably calculated to uncover responsive documents. *Id.* at 8. USCIS maintains that the redacted personal information was exempt from disclosure under exemption (b)(6), and that the Assessment to Refer and the asylum officer's handwritten notes were properly withheld under exemption (b)(5)'s deliberative process privilege. *Id.* at 10-15.

Abramyan argues that the information provided in the original FOIA request should have been sufficient to retrieve the records, and thus USCIS's initial search in response to the December, 2011 FOIA request was inadequate. Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl's Opp."), Dkt. #9, at 4-5. Abramyan also challenges the withholdings under exemption (b)(5). She proposes that the Assessment to Refer was a final opinion not subject to the deliberative process privilege, and that USCIS's descriptions of the handwritten notes are so generic as to prevent the Court from determining whether the exemption should apply and whether USCIS met its burden in disclosing all segregable non-exempt information. *Id.* at 9-10.

## II.     LEGAL STANDARD

The Freedom of Information Act provides "a statutory right of public access to documents and records held by agencies of the federal government." *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982); *see also* 5 U.S.C. § 552. The statute provides for disclosure of agency records, upon a proper request, unless the information sought falls within any of nine exemptions. *See* 5

U.S.C. §§ 552(a)(3), (b).

Most FOIA cases can be resolved on summary judgment. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a FOIA case, an agency is entitled to summary judgment if it can demonstrate that there are no material facts in dispute as to the adequacy of its search for or production of responsive records. *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs.,* 849 F. Supp. 2d 13, 21–22 (D.D.C. 2012).

Where a plaintiff challenges the adequacy of a search, "[w]hat the agency must show beyond material doubt is that it has conducted a search reasonably calculated to uncover all relevant documents." *Id.* To meet this burden, the agency may submit affidavits or declarations that are "relatively detailed and nonconclusory and . . . submitted in good faith." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)) (internal quotation marks omitted). Such agency affidavits "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

Where a plaintiff challenges a withholding under 5 U.S.C. § 552(b), an agency must show that any responsive information it has withheld was either exempt from disclosure under one of the exemptions enumerated in 5 U.S.C. § 552(b), or else "inextricably intertwined with" exempt

information. *Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). "Because FOIA challenges necessarily involve situations in which one party (the government) has sole access to the relevant information, and that same party bears the burden of justifying its disclosure decisions, the courts ... require the government to provide as detailed a description as possible—without, of course, disclosing the privileged material itself—of the material it refuses to disclose." *Oglesby v. U.S. Dep't of Army,* 79 F.3d 1172, 1178 (D.C. Cir. 1996). This justification is typically contained in a declaration or affidavit.[3] An agency's affidavits or declarations are presumed to be submitted in good faith. *See SafeCard Servs., Inc. v. S.E.C.,* 926 F.2d 1197, 1200 (D.C. Cir. 1991). The agency must provide "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record," so as to "permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Service,* 802 F.2d 525, 527 n. 9 (D.C. Cir. 1986) (*citing Mead Data,* 566 F.2d at 251).

    5 U.S.C. § 552(b)(5) permits agencies to withhold documents that are part of the agency's deliberative processes. A document must satisfy two conditions in order for the agency to properly withhold it under this exemption: (1) its source must be a government agency, and (2) it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it. *See Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8–9 (2001). To qualify for protection under the deliberative process privilege, an agency's materials must be both "predecisional" and a part of the government's "deliberative process." *Id.* at 14 (quoting *Nat'l Inst. of Military Justice v. U.S.*

---

[3] Where an agency has made extensive withholdings, the agency prepares an index that describes each withheld document and explains the basis for the withholding, referred to as a *Vaughn* index after the case of *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973). The limited number of documents at issue in this case makes a full *Vaughn* index unnecessary.

*Dep't of Defense,* 512 F.3d 677, 680 n. 4 (D.C. Cir. 2008); *accord Pub. Citizen, Inc. v. Office of Mgmt. & Budget,* 598 F.3d 865, 867 (D.C. Cir. 2010).

The scope of the privilege does not turn on whether the contents of a record are labeled "factual" or "deliberative," but rather on whether the record reflects an agency's deliberative process. *Nat'l Wildlife Fed. v. U.S. Forest Serv.,* 861 F.2d 1114, 1119 (9th Cir. 1988); *see Petroleum Info. Corp. v. U.S. Dep't of Interior,* 976 F.2d 1429, 1435 (D.C. Cir. 1992) (cautioning "against reflexive fact/opinion characterization as the way to decide the full range of Exemption 5 cases"). A record is deliberative if "it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980)). Within this rubric, courts have found the privilege to cover "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975). Factual information must ordinarily be disclosed. *See Petroleum Info. Corp.,* 976 F.2d at 1435 (citing *EPA v. Mink*, 410 U.S. 73, 87,89 (1973) (endorsing fact/opinion distinction)). However, even "purely" factual information is protected by the deliberative process privilege when it "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Citizens for Responsibility and Ethics in Washington (CREW) v. U.S. Dept. of Homeland Sec.,* 514 F. Supp. 2d 36, 46 (D.D.C. 2007); *Judicial Watch, Inc. v. Dep't of Treasury,* 796 F. Supp. 2d 13, 27–28 (D.D.C. 2011) (citing cases).

To justify withholding documents pursuant to this privilege, the agency must show "by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA." *Mead Data,* 566 F.2d at 258. It must point to the role in the deliberative process played

by each of the documents. *See Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F. Supp. 2d 252, 259 (D.D.C. 2004) (requiring the agency to identify the role of a contested document in a specific deliberative process to prove that disclosure would defeat the purposes of FOIA).

### III. ANALYSIS

#### A. Adequacy of USCIS's Search

As noted above, to prevail on summary judgment an agency must show that it conducted a search reasonably calculated to uncover all relevant documents. Although USCIS was initially unsuccessful, Welsh's declaration explains that USCIS was subsequently able to retrieve Abramyan's A-file when Darbinian's letter of appeal "provided additional information about [Abramyan], including that she had applied for asylum and is the beneficiary of a visa petition…that was filed by her motion and pending at the U.S. consulate in Moscow, Russia." Welsh Dec. ¶ 8. According to Welsh, USCIS used Abramyan's visa petition number to search USCIS's Person Centric Query System (PCQS), thereby retrieving Abramyan's A-number and A-file. *Id.* ¶ 12.

USCIS does not explain why it was unable to retrieve Abramyan's A-file using the information she submitted in her initial FOIA request. Nevertheless, that issue is moot. Abramyan does not dispute that she ultimately received the documents responsive to her request, save the six pages USCIS withheld.[4] Subsequent production can cure deficiencies in the initial search. *See People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 179 (D.D.C. 2011). Welsh's declaration describes in detail the search process that ultimately produced the documents. Welsh Dec. ¶¶ 7, 12. The Court affords Welsh's

---

[4] Abramyan also alleges that ICE never responded regarding the eleven pages referred to that agency by USCIS. *See* Pl's Statement of Genuine Issues ¶¶ 8-9. However, Abramyan did not bring suit against ICE, and has not alleged that USCIS erred in making the referral, or that ICE improperly withheld documents or failed to conduct an adequate search. Thus her allegations regarding ICE fall outside the scope of this case.

10

declaration the presumption of good faith, which Abramyan has not attempted to rebut. That USCIS ultimately retrieved the documents after initially coming up empty does not evidence bad faith. *See Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 404 F. Supp. 2d 325, 333-34 (D.D.C. 2005) *aff'd*, 512 F.3d 677 (D.C. Cir. 2008) ("While it now seems obvious that the defendant's initial search was inadequate, and it is clear that the defendant could have been more diligent in its initial response to the plaintiff's FOIA request, this does not demonstrate bad faith…especially in light of the subsequent efforts to search for responsive records once the parties engaged in discussions about the specific type of documents the plaintiff was seeking").

In fact, to treat subsequent production as proof that the agency conducted an inadequate search, or acted in bad faith, would "punish those agencies that attempted to correct past inadequate searches." *PETA*, 800 F. Supp. 2d at 179. Accordingly, the Court finds that USCIS conducted an adequate search.

### B. Documents Withheld Under Exemption (b)(5)

i. Assessment to Refer

Abramyan does not dispute that the Assessment to Refer includes deliberative material. Welsh's declaration explains that the Assessment to Refer "contains a brief factual distillation" of the asylum interview, along with the asylum officer's assessment of Abramyan's credibility, the reasons for that assessment, and the asylum officer's recommendation. Welsh Dec. ¶ 19. Assessments of credibility and recommendations are "quintessential deliberative information." *Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 19 (D.D.C. 2013) (finding that USCIS properly withheld an Assessment to Refer under the deliberative process privilege). Even the factual information in the Assessment to Refer can be considered deliberative, because it is a "distillation" of the facts, not a "verbatim transcript." Welsh Dec. ¶ 21. The asylum

11

officer's particular selection of facts may reveal USCIS's deliberative process. *See Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 513–14 (D.C. Cir.2011) (recognizing deliberative process privilege for factual summaries culled by the agency from a much larger universe of facts, because they reflect an exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations). Welsh's description of the document is sufficient to establish that the Assessment to Refer is deliberative.

Abramyan challenges USCIS's assertion that the Assessment to Refer was predecisional. She contends that the Assessment to Refer is, in effect, the final decision of USCIS on an asylum application, subject only to perfunctory review by a supervisory officer. Pl's Opp. at 6-7. However, even Abramyan appears to concede that the supervisory review constitutes more than a rubber stamp. *Id.* at 7 ("Although a supervisory asylum officer (SAO) reviews the asylum officer's Assessment to Refer, it is *often* simply a matter of procedure") (emphasis added). The same manual that Abramyan quotes as vesting the decision entirely in the asylum officer also instructs supervisors to give "substantial deference" – *i.e.*, not complete deference – to the interviewing officer's determination. *Id.* In fact, Abramyan's perspective is consistent with Welsh's declaration, which describes the Assessment to Refer as the asylum officer's "initial recommendation." Welsh Dec. ¶ 21.

Another court in this Circuit recently reached the same conclusion on similar facts with respect to an Assessment to Refer. *See Anguimate*, 918 F. Supp. 2d at 18 ("The 'predecisional' nature of the Assessment is clear, given that it predated and formed the basis for [USCIS's] decision to deny the plaintiff's asylum application"). Because the Assessment to Refer was both predecisional and deliberative, it qualifies for withholding under exemption (b)(5).

Abramyan suggests briefly that "any deliberative portion [of the Assessment to Refer] can be

severed from the factual findings and record of proceedings." Pl's Opp. at 8. The Court understands this as argument regarding the reasonable segregability of factual material within the document. However, Abramyan's argument fails because, as Welsh explained, even the factual material was deliberative. *See* Welsh Dec. ¶ 21 ("the factual portions of the Assessment to Refer…reflect[] a selective recording of information the INS asylum officer deemed particularly pertinent to Plaintiff's request for asylum"). This echoes the principle re-affirmed by the D.C. Circuit in *Ancient Coin Collectors*, that certain factual summaries are exempt from disclosure where they reflect an exercise of judgment as to what is relevant. *See* 641 F.3d at 513. USCIS's description of the document leaves no non-exempt material to segregate.

      ii. Handwritten Notes

Abramyan challenges the withholding of the handwritten notes on the ground that USCIS's descriptions of the handwritten notes are so generic as to prevent the Court from determining whether the exemption should apply, or whether USCIS met its burden in disclosing all segregable non-exempt information. Pl's Opp. at 9-10. FOIA requires the government to provide as much detail as possible, without actually disclosing the privileged material itself. *Oglesby*, 79 F.3d at 1178. In this case, the Welsh declaration explained that the withheld pages are "handwritten notes from INS officers who examined and adjudicated the Plaintiff's application for asylum." Welsh Dec. ¶ 21. Welsh stated that the first page concerns the officer's "review of records relevant to the Plaintiff's asylum application, including discussion of birth certificates from Azerbaijan." *Id.* Welsh described information concerning Plaintiff's birth certificate and that of "another individual," as well as "the INS officer's impressions about the birth certificates" and indications that "the officer needed additional information concerning the birth certificates." *Id.* Welsh also referred to "a discussion about a translation of the birth

13

certificates" and "references [to] another individual's A-number." *Id.* This is a sufficiently detailed description for the Court to determine that the deliberative process privilege applies, and that no information on that page is reasonably segregable.

According to Welsh, the remaining pages "record various portions of the Plaintiff's asylum interview and include some discussion about the Azerbaijan birth certificates the Plaintiff provided for herself and her daughters." *Id.* Welsh said that "the notes reflect commentary on the veracity of the documents submitted by the Plaintiff," and "preliminary conclusions drawn by the asylum officer during the Plaintiff's asylum interview." *Id.* As with the first page, Welsh's description provides enough detail for the Court to determine that the notes are protected by the deliberative process privilege, and that USCIS could not reasonably segregate non-exempt information – if any non-exempt information exists on those pages.

Abramyan does not appear to dispute that the notes are predecisional, as they unquestionably precede even the Assessment to Refer. Insofar as they contain commentary on Abramyan's credibility and recommendations regarding asylum, the handwritten notes are as "quintessentially deliberative" as similar sections in the Assessment to Refer. With respect to the factual material, the Welsh declaration indicates that only "various portions" of the interview were recorded, not a "verbatim transcript." The Court cannot require USCIS to describe exactly which portions of the interview the asylum officer selected to record, without defeating the purpose of the exemption. Welsh's declaration suffices to show that the selective summary of factual material is itself deliberative, and thus protected from disclosure.[5]

---

[5] *Hajro v. U.S. Citizenship & Immigration Servs.,* 832 F. Supp. 2d 1095 (N.D. Cal. 2011), cited by Abramyan, is readily distinguishable from this case. In *Hajro*, the court required USCIS to isolate certain factual information from handwritten interview notes and disclose that information along with an expedited *Vaughn* index. 832 F. Supp. 2d at 1114. The court recognized that "at least a fair portion of the handwritten notes" might contain deliberative material, but USCIS had failed to offer "any detailed affidavit or even a description of what type of material the notes cover and, in a non-conclusory manner, their role in the agency's process." *Id.* at 1113-14. USCIS also did not "set forth any basis for the court to evaluate whether, taking into account the deliberative process as a whole,

For the reasons given in this Memorandum Opinion, the Court will **GRANT** Defendants' Motion for Summary Judgment. A separate Order consistent with this Opinion will issue.

December 4, 2013

_Barbara J. Rothstein_
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

relevant factual information contained in the handwritten notes may be disclosed without revealing the mental process of the decisionmaker." *Id.* at 1114. Those circumstances are not present in this case. USCIS has submitted an affidavit describing the notes in sufficient detail for the Court to make its determination.